1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TODD MATTHEW BRABBIN,      )   Case No. SACV 10-386-OP
                           )
              Plaintiff,   )
                           )
         v.                )   MEMORANDUM OPINION AND
                           )   ORDER
MICHAEL J. ASTRUE,         )
Commissioner of Social Security, )
                           )
              Defendant.   )
_____)

    The Court[1] now rules as follows with respect to the eight disputed issues
listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

    [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 7, 19.)

    [2]  As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the
Administrative Record and the Joint Stipulation filed by the parties.  In accordance
with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined
which party is entitled to judgment under the standards set forth in 42 U.S.C. §
405(g).

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1)   Whether the ALJ properly considered Plaintiff's subjective complaints and credibility;

(2)   Whether the ALJ properly considered the opinions of the examining and treating physicians; and

(3)   Whether the ALJ properly determined that Plaintiff was capable of performing other work.

(JS at 4.)[3]

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the

---

[3]   The disputed issues are addressed in a different order below for clarity of the ultimate disposition.

1 │ Commissioner's decision must be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450,

2 │ 1452 (9th Cir. 1984).

3 │ **III.**

4 │ <u>**DISCUSSION**</u>

5 │ **A.    <u>The ALJ's Findings.</u>**

6 │        The ALJ found that Plaintiff has the severe impairments of disorder of back;

7 │ history of Lyme disease; affective disorder; and anxiety order, not otherwise

8 │ specified.  (AR at 13.)

9 │        He found Plaintiff had the residual functional capacity ("RFC") to perform

10 │ light work with the following limitations:  lift twenty pounds occasionally, and ten

11 │ pounds frequently; stand/walk about four hours in an eight-hour workday; sit for

12 │ one hour at a time with a break from sitting of one to three minutes each hour; can

13 │ occasionally climb, balance, stoop, kneel, crouch, and crawl; no ladders, ropes, or

14 │ scaffolds, or unprotected heights; and no highly stressful jobs such as in an

15 │ emergency room or with high production levels.  (<u>Id.</u> at 16.)

16 │        Relying on the testimony of the vocational expert ("VE") to determine the

17 │ extent to which Plaintiff's limitations eroded the unskilled light occupational base,

18 │ the ALJ asked the VE whether jobs exist in the national economy for an individual

19 │ with Plaintiff's age, education, work experience, and RFC.  (<u>Id.</u> at 23, 42-46.)

20 │ Based on the testimony of the VE, the ALJ determined Plaintiff could perform the

21 │ requirements of such light work as Information Clerk, Cashier II, and Assembler.

22 │ (<u>Id.</u>)

23 │ **B.    <u>Remand Is Warranted Due to the ALJ's Failure to Properly Consider</u>**

24 │ **<u>the Opinion of Plaintiff's Examining Source.</u>**

25 │        Plaintiff contends that the ALJ erroneously rejected the opinion of his

26 │

27 │

28 │

3

examining[4] neuropsychologist, Christopher Ingalls, Ph.D., and his treating internist, Charles Koftan, M.D.  (JS at 32-36, 38-41.)  In addition, Plaintiff argues that the ALJ erred in assigning controlling weight to state agency physicians, Robin Rhodes Campbell and Kristof Siciarz.  (Id. at 36-38)  The Court agrees with Plaintiff's contentions.

### 1.   **Applicable Law.**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33; Social Security Ruling ("SSR") 96-2p.  Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990)).  Even where an examining

---

[4]   The Court refers to Dr. Ingalls as an examining physician, rather than a treating physician, although he examined Plaintiff on three separate occasions.  Dr. Ingalls' examinations of Plaintiff were condensed into a single, comprehensive report and, although Dr. Ingalls administered testing and offered diagnoses and opinions, he did not offer Plaintiff any treatment.

physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

### 2.   Dr. Ingalls.

Here, the ALJ rejected the opinions of Plaintiff's examining neuropsychologist as follows:

> The claimant was also examined by Christopher W. Ingalls, Ph.D., a clinical psychologist and neuropsychologist, in March 2009. Dr. Ingalls noted his findings indicated the claimant had significant impairment in sustained and divided attention and psychological functioning and assessed the claimant with a GAF of 50.[5] Dr. Ingalls also noted the claimant had severe problems with sustained and divided attention on the CPT-II beyond what would be expected from "simply" attention deficit hyperactivity disorder and opined the claimant's test pattern appeared to be consistent with attention deficit hyperactivity disorder complicated by a major depressive disorder. However, Dr. Ingalls noted the claimant had a "longstanding history of Attention Deficit Hyperactivity Disorder," which is not supported by the evidence

---

[5]  A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational  functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders-IV-TR 32 (Am. Psychiatric Ass'n ed.,4th ed. 2000).  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34.

5

1  of record. Morever, Dr. Ingalls made no mention of claimant's use of
2  methamphetamines. Further the record does not indicate whether or not
3  the claimant ever stopped using methamphetamines. Dr. Ingalls appears
4  to have accorded the claimant's subjective complaints and self-reports
5  significant weight without having a complete picture of the claimant's
6  history, i.e. methamphetamine use. Accordingly, his opinion is rendered
7  less persuasive. Dr. Ingalls also opined the claimant shows "some
8  performance deterioration of work or work-like setting, problems with
9  persistence and pace consistent with Social Security guidelines" and
10  remains functionally impaired. However, Dr. Ingalls fails to provide any
11  opinion in terms of the degree of impairment other than making a
12  conclusory opinion that the claimant "would not be self supporting" as
13  a result of his impairments. This opinion is rejected as it is inconsistent
14  with the objective evidence as a whole and appears to rely heavily on
15  information provided by the claimant without having the benefit of
16  reviewing the record as now constituted. Dr. Ingalls' statement that the
17  claimant has a "disability" is not accorded any weight as the
18  determination of disability is a matter reserved to the Commissioner.

19  (AR at 20-21.)

20       First, the ALJ rejected Dr. Ingalls' opinions because he stated in his May
21  21, 2009, Comprehensive Neuropsychological Consultation Report that Plaintiff
22  has a "longstanding history of Attention Deficit Hyperactivity Disorder
23  ["ADHD"]," which, according to the ALJ, was not supported by the record. (AR
24  at 21.) However, the record reflects Plaintiff's diagnosis of ADHD at least as of
25  late 2003, some five or six years before Dr. Ingalls' report. (Id. at 261.) Although
26  Dr. Ingalls does not define his use of "longstanding history," certainly the record
27  supports a finding of a prolonged history of ADHD.

28

6

1   Next, the ALJ rejected Dr. Ingalls' opinions because he made no mention of
2   Plaintiff's methamphetamine use despite the fact that there was no evidence in the
3   record to suggest that Plaintiff had discontinued his drug use. (Id. at 21.) Again,
4   the ALJ has overlooked contrary evidence in the record. A November 5, 2007,
5   drug screen shows that Plaintiff tested negative for methamphetamine. (Id. at
6   323.) In addition, I. Anneli Hanna, M.D., the psychiatrist who treated Plaintiff at
7   the time his drug use was discovered and followed Plaintiff's progress in this
8   regard (id. at 285, 290-92, 296, 322, 376), noted on January 10, 2008, that Plaintiff
9   had not relapsed with his addiction (id. at 374). Thus, contrary to the ALJ's
10  finding that "the record does not indicate whether or not the claimant ever stopped
11  using methamphetamine" (id. at 21), the record does not indicate that Plaintiff
12  resumed his use of methamphetamine after November 2007.

13  The ALJ also rejected Dr. Ingalls' opinions because he "accorded the
14  claimant's subjective complaints and self-reports significant weight without
15  having a complete picture of the claimant's history, i.e. methamphetamine use."
16  (Id. at 21.) As explained above, there is no evidence in the record to suggest that
17  Plaintiff was using methamphetamine at the time of his examination by Dr. Ingalls
18  in 2009. Although Dr. Ingalls states in his report that Plaintiff "denies any use of
19  alcohol or recreational drugs," he does not indicate that Plaintiff denied any past
20  use of drugs. (Id. at 411.) Ultimately, however, Dr. Ingalls' opinions were based
21  on an extremely exhaustive battery of psychological testing, rather than merely on
22  Plaintiff's "subjective complaints and self-reports." Because there is no evidence
23  to indicate that Plaintiff was using methamphetamine within the year and a half
24  preceding Dr. Ingalls' examinations, there is no reason to believe that the test
25  results reported by Dr. Ingalls were invalidated by Plaintiff's drug use.

26  Next, the ALJ rejects Dr. Ingalls' opinions because he "fails to provide any
27  opinion in terms of the degree of impairment" and makes "a conclusory opinion

28

7

1   that the claimant 'would not be self supporting.'" (Id. at 21.)  Again, the ALJ

2   selectively considers the medical evidence.  Dr. Ingalls' report was far from

3   conclusory.  The ten-page report was the result of three separate examinations and

4   some twenty psychological tests.  Dr. Ingalls described Plaintiff's results on the

5   tests and the practical impact of these scores.  Finally, Dr. Ingalls provided

6   specific diagnoses and offered an in depth summary, as well as recommendations.

7   (Id. at 411-21.)  Significantly, Dr. Ingalls opined that Plaintiff exhibited "[m]arked

8   restriction of activities of daily living" and "[m]arked difficulties in maintaining

9   social functioning," classifications as to the degree of an impairment quite familiar

10  in the social security context.  (Id. at 420.)  Moreover, although Dr. Ingalls did not

11  classify each and every impairment in terms of degree, he discussed in detail

12  Plaintiff's limitations and assessed a GAF score of 50, which in itself offers

13  insight into the degree of Plaintiff's impairments.  (Id. at 418-21.)[6]  Significantly,

14  the specific degree of impairment is an issue reserved to the Commissioner in

15  making a determination of a claimant's RFC.  See SSR 96-5p.  Accordingly, any

16  opinions of Dr. Ingalls in this regard would have been ignored.  Id.  Finally, to the

17  extent that Dr. Ingalls' report was ambiguous or inadequate to allow for the proper

18  evaluation of the evidence because it lacked findings as to the specific degree of

19  impairment, the ALJ had a duty to further develop the record.  See Celaya v.

20  Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (ALJ has an independent duty to fully

21  and fairly develop a record in order to make a fair determination as to disability,

22

23

24      [6]  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
        1999), as cited by Defendant, is inapposite.  There, the Ninth Circuit held that a
25      psychologist's opinions were properly rejected because they did not show how the
        claimant's symptoms translated into specific functional deficits which precluded
26      work activity.  Id.  Here, however, Dr. Ingalls provided specific assessments as to
        Plaintiff's impairments and explicitly discussed Plaintiff's deficits that would
27      preclude work activity.  (AR at 418-21.)

28

even where the claimant is represented by counsel); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing <u>Smolen</u>, 80 F.3d at 1288) (ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry").

The ALJ further rejected Dr. Ingalls' opinions because he appeared "to rely heavily on information provided by the claimant without having the benefit of reviewing the record as now constituted." (AR at 21.) First, as explained above, Dr. Ingalls' opinions are the result of extensive psychological testing and do not blindly rely on Plaintiff's subjective complaints. In addition, the fact that a physician did not have the benefit of each and every portion of the record as constituted at the time of the hearing cannot stand as a legitimate excuse for rejecting the physician's opinion. A contrary finding would mean that any medical source that examined, or discontinued treatment of, a claimant prior to the hearing before the ALJ could always be rejected for the mere fact that the record had not been complete at the time the source rendered the opinion.

In addition, the ALJ rejected Dr. Ingalls' ultimate conclusion of disability because the determination of disability is a matter reserved to the Commissioner. (<u>Id.</u>) While it is perfectly true that the ultimate determination of disability is reserved to the Commissioner, SSR 96-5p, this is not a legitimate reason for rejecting the balance of Dr. Ingalls' opinions. <u>See</u> 20 C.F.R. § 404.1527(e)(1) (in making the ultimate determination of disability, the Commissioner will "review all of the medical findings and other evidence that support a medical source's statement that you are disabled").

Finally, it appears that the ALJ also rejected Dr. Ingalls' opinions because they were inconsistent with other evidence of record. (AR at 21.) However, this inconsistency is what triggers the ALJ's duty to provide specific and legitimate

9

reasons for rejecting the examining source, but it is not a reason in and of itself to reject the medical source.  Cf. SSR 96-2p ("[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator); see Lester, 81 F.3d at 830-31 (same specific and legitimate standard for treating source must be applied to examining source).

While this Court makes no finding as to the validity or weight of the Dr. Ingalls' opinions, the Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to reject those opinions.  On remand, the ALJ will have an opportunity to address this issue again and should consider these issues in determining the merits of Plaintiff's case.

### 3. **Dr. Koftan.**

Here, the ALJ discussed the opinions of Plaintiff's treating internist as follows:

> The claimant's treating physician Charles Koftan, M.D., also provided an opinion with regard to the claimant's functional abilities. Dr. Koftan first saw the claimant on March 2, 2009 at which time the claimant's chief complaints were chronic fatigue and brain fog. However, Dr. Koftan noted no abnormalities from his physical examination. The next treating record from Dr. Koftan is dated March 31, 2009 and although the claimant reported feeling "30% of normal functioning" Dr. Koftan noted Stratera was helping with function and concentration and the claimant's energy was better. On June 22, 2009, Dr. Koftan completed a "Physical Residual Functional Capacity Questionnaire" wherein he stated he sees the claimant every one to three months, but first saw the claimant on March 2, 2009. However, Dr. Koftan opined the claimant's limitations have applied since June 2006,

10

nearly three years before he ever saw the claimant but conveniently the month prior to the claimant's alleged onset date. Dr. Koftan's backdating without any basis renders his opinion less persuasive and suggests Dr. Koftan may be acting as an advocate with sympathy for the claimant rather than providing an opinion based on objective evidence. Dr. Koftan opined the claimant's limitations included: could sit and stand/walk for less than 2 hours of an 8 hour day; could frequently lift and carry 10 pounds, occasionally 20 pounds; could occasionally perform neck motions; could occasionally twist, stoop (bend), crouch/squat; climb ladders; and climb stairs. However, these limitations appear to have been based on the claimant's subjective complaints as Dr. Koftan failed to identify any clinical findings and objective signs in support of his opinion other than stating the claimant's examinations were within normal limits. Indeed, Dr. Koftan's limitations to the extent more restrictive than found herein are unsupported by any objective evidence. Dr. Koftan opined the claimant was limited to using his hands for grasping, turning and twisting as well as his fingers for fine manipulation only 10% with reaching only 25% of an 8 hour day. However, his physical examination noted no abnormalities. Further, at the time of the consultative examination, the claimant did not exhibit any significant weakness with grip strength. The degree of limitations opined by Dr. Koftan is inconsistent with the objective evidence.

According to the California Board of Medicine, Dr. Koftan is an internist. Yet, has opined the claimant has significant mental impairments and "remains functionally impaired" despite treatment . Dr. Koftan did not have the benefit of reviewing the other medical reports

contained in the current record. Moreover, Dr. Koftan's opinion in this regard appears to rest at least in part on an assessment of impairments outside his area of expertise. While the doctor does have a treating relationship with the claimant, the treatment history is quite brief and it appears Dr. Koftan is not aware of the claimant's methamphetamine use, which could account for his alleged symptoms. Finally, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Further, the record contains evidence that the claimant has "screamed" at a previous treating physician for refusing to sign disability papers for him For all these reasons, I accord little weight to, and to the extent inconsistent with the findings herein rejected, Dr. Koftan's opinion.

(AR at 18-19 (citations omitted).)

The ALJ provided specific and legitimate reasons for affording Dr. Koftan's opinions less weight. First, the ALJ suggests that many of Dr. Koftan's opinions were based solely on Plaintiff's subjective complaints, as they were not supported by any clinical findings or objective signs. See Morgan, 169 F.3d at 602 (an ALJ may properly reject the findings of a treating physician premised largely on the subjective complaints of the Plaintiff when those complaints have been "properly

1   discounted" by the ALJ);[7] <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989).  The

2   record supports this reasoning, particularly with respect to Dr. Koftan's

3   assessment of hand and finger impairments in the absence of abnormalities upon

4   physical examination.  (AR at 446-48, 450-51.)

5       In addition, the ALJ gave less weight to Dr. Koftan because he offered an

6   opinion on medical areas outside his area of expertise.  <u>See</u> <u>Smolen</u>, 80 F.3d at

7   1285 (citing 20 C.F.R. §§ 404.1527(d)(5), 416.9127(d)(5)).  It is clear from the

8   record that Dr. Koftan offered conclusions about Plaintiff's mental impairment

9   despite his specialization in internal medicine.  (AR at 446, 448-49, 451.)

10      The foregoing reasons constitute specific and legitimate reasons, supported

11  by the record, for rejecting Dr. Koftan's opinions.[8]  However, because this action

12  must be remanded for the consideration of Dr. Ingalls' opinions, on remand the

13  ALJ should reconsider the opinions of Dr. Koftan, taking into consideration the

14  medical record as a whole.

15      **4.    State Agency Physicians.**

16      The ALJ gave great weight to state agency examining internist Kristof

17  Siciarz, M.D., and examining psychologist Robin Rhodes-Campbell, Ph.D., who

18  both reported essentially normal findings.  (<u>Id.</u> at 368-71, 382-88.)  As this action

19  must be remanded for further consideration of Dr. Ingalls' conclusions, the ALJ is

20  further directed to reconsider the weight to be afforded the opinions of the state

21  agency examining physicians in light of the entirety of the medical record.

24  _____

25  [7]  As discussed below, the Court finds that the ALJ properly rejected
    Plaintiff's subjective complaints of impairment.

27  [8]  The Court does not express an opinion as to the remaining reasons offered
    by the ALJ for rejecting Dr. Koftan's conclusions, as the reasons cited above are
28  sufficient to sustain the ALJ's decision.

13

1

2

**C.      The ALJ Properly Considered Plaintiff's Subjective Complaints and**
**Properly Assessed Plaintiff's Credibility.**

3

4

5

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting his subjective complaints of impairment.  (JS at 4-24.)[9]  The Court disagrees with Plaintiff's contention.

6

7

**1.      Applicable Law.**

8

9

10

11

12

13

14

15

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

16

17

18

19

20

21

22

23

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen, 80 F.3d at 1281; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d

24

_____

25

26

27

28

[9]  Within this claim, Plaintiff also argues that the ALJ failed to fully consider the effect of Plaintiff's Attention Deficit Disorder (JS at 4-7), and erred in finding that Plaintiff did not meet or equal a listed impairment (id. at 7-12).  On remand, the Court directs the ALJ to reconsider Plaintiff's allegations with respect to these issues in light of all the medical evidence of record.

341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284. SSR 96-7p further provides that an individual may be less credible for failing to follow prescribed treatment without cause. SSR 96-7p.

"[A]ffirmative evidence suggesting" that a claimant is malingering vitiates the applicability of a clear and convincing standard of review. Smolen, 80 F.3d at 1283-84; see also Schow v. Astrue, 272 Fed. Appx. 647, 651, 654-55 (9th Cir. 2008).

## 2.   **Analysis.**

The Court must begin its analysis with the ALJ's reference to evidence of Plaintiff's malingering. In this regard, the ALJ cited the April 19, 2008, psychological report of Dr. Rhodes-Campbell for the ALJ's conclusion that "the claimant's responses during psychological/psychiatric testing resulted in an invalid profile, raising the possibility that the claimant was not putting forth maximal effort or was not fully cooperating." (AR at 22.) In fact, in her report, Dr. Rhodes-Campbell explained that Plaintiff's score on the Rey 15 Item Memory Test were indicative of malingering (id. at 386, 387), and that overall his effort during the examination was suboptimal (id. at 384, 385, 386-87). In light of the affirmative evidence suggesting malingering, and the ALJ's explicit reliance

15

thereon, the ALJ was not required to provide clear and convincing reasons for rejecting Plaintiff's credibility.  Smolen, 80 F.3d at 1283-84.

Nevertheless, even under the clear and convincing standard, the ALJ properly rejected Plaintiff's credibility.  First, the ALJ noted that Plaintiff complained of significant limitations due to his back impairment.  However, as the ALJ concludes (AR at 17), Plaintiff received little if any treatment for his back impairment.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed).  In addition, the ALJ cited Plaintiff's ability to perform activities that are inconsistent with his subjective complaints of severe impairments.  (AR at 21, 22.)  The record supports such a finding.  Plaintiff testified that he can spend hours at a time using a computer despite subjective complaints of extreme fatigue and lack of concentration.  (Id. at 41.)  In addition, multiple portions of the record reflect that Plaintiff has episodes of significant activity despite his assertions that he suffers from debilitating fatigue.  (Id. at 22, 31, 41, 192, 193.)  See Morgan, 169 F.3d at 600 (ALJ may properly rely on plaintiff's daily activities inconsistent with total disability); Tidwell, 161 F.3d at 602 (same); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (same).

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptoms and discounting his credibility.[10]

---

[10]  The ALJ also appeared to reject Plaintiff's credibility in large part due to the unsupported belief that Plaintiff continues to abuse methamphetamine.  While it is possible that Plaintiff continues to engage in the use of illicit drugs, there is no

(continued...)

16

1

2    **D.    Plaintiff's Ability to Perform Other Work Activity.**

3          Finally, Plaintiff challenges the ALJ's conclusion that he retains the RFC to

4    perform work that exists in significant numbers in the national economy.  (JS at

5    44-46.)

6          Based on the medical evidence and the weight assessed thereto in the

7    opinions, the ALJ assessed Plaintiff's RFC as follows:

8                 After careful consideration of the entire record, I find that the

9          claimant has the residual functional capacity to perform light work as

10         defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can

11         lift 20 pounds occasionally, 10 pounds frequently; can stand and walk

12         4 hours and sit for 6 hours in an 8 hour day; can sit for 1 hour at a time

13         and must have a break from sitting, 1 to 3 minutes each hour; can

14         occasionally climb, balance, stoop, kneel, crouch, and crawl; no ladders,

15         ropes or scaffolds or unprotected heights; no highly stressful jobs such

16         as in an emergency room or high production levels.

17   (AR at 16.)

18         In light of this RFC assessment, and with the support of testimony from a

19   VE, the ALJ concluded that Plaintiff could not perform his past relevant work as a

20   registered nurse, but could perform other work as an information clerk, cashier,

21

22   ───────────────

           [10](...continued)
23   support for such a finding in the record.  To the contrary, the record supports a
     finding that Plaintiff stopped using methamphetamine at the end of 2007 and has
24   not resumed such use.  (AR at 323, 374.)  However, because the ALJ cited other,
     legitimate reasons for rejecting Plaintiff's subjective complaints, the credibility
25   determination must be upheld.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533
     F.3d 1155, 1162, 1163 (9th Cir. 2008) (an error by the ALJ with respect to one or
26   more factors in a credibility determination may be harmless if there "remains
27   substantial evidence supporting the ALJ's conclusions" in that regard).
28

                                        17

and assembler of small parts.  (Id. at 22-23, 42-44.)

The ALJ assessed Plaintiff's RFC based on the medical evidence and the weight he assigned to the opinions of each medical source.  Significantly, the Court has determined that this action must be remanded for the ALJ to reconsider the weight to be afforded those medical sources.  Accordingly, on remand, the ALJ is directed to reconsider Plaintiff's RFC in light of all the evidence of record and the appropriate weight afforded thereto.

**IV.**

**ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

DATED: February 16, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge

18